**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN**

GREAT LAKES TRANSPORTATION HOLDING LLC, d/b/a METRO CARS,

Plaintiff,

Case No.:

vs.

CAB ONE, LLC, JOEL TEJADA, and JOHN EDWARD HEDRICK, JR.,

Defendants.

Paul Stewart (P79977)
DYKEMA GOSSETT PLLC
2723 South State Street, Suite 400
Ann Arbor, Michigan 48104
(734) 214-7629
pstewart@dykema.com

Jennifer Fraser
DYKEMA GOSSETT PLLC
1100 K St., NW, Suite 1100 West
Washington, DC 20005
202-906-8712
jfraser@dykema.com

*Attorneys for Plaintiff Great Lakes Transportation Holding LLC*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Great Lakes Transportation Holding LLC, by its attorneys Dykema Gossett PLLC, states as follows for its Complaint against Defendants Cab One,

LLC, Joel Tejada, and John Edward Hedrick, Jr. ("Defendants"):

## NATURE OF ACTION

1. Defendants provide chauffeur/limousine and other transportation services ("Defendants' Services"). Defendants, individually, jointly, and/or in concert, advertise and sell their services via a Google Business Profile using trademarks that are identical to Plaintiff's federally registered trademarks METRO CARS and METRO CAB (collectively, the "Plaintiff Marks"). Defendant John Edward Hedrick, Jr. ("John Hedrick") is aware of Plaintiff Marks and willfully uses and infringes the registered METRO CAB trademark on and through the Square platform and has been confusing customers through such use and in other ways, in violation of federal and state law and in breach of contract with Plaintiff. Plaintiff has been compelled to bring this action for federal and state trademark infringement and unfair competition because Plaintiff has priority of use of the Plaintiff Marks, and because of the likelihood of confusion in the relevant market between the Plaintiff Marks and Defendants' use of those trademarks and variants thereof. Plaintiff has alerted Defendants to this concern and Plaintiff's rights in the Plaintiff Marks. Despite such prior notice including (1) Defendant John Hedrick's prior notice as a former driver for Plaintiff from around May 2024 through approximately March 2025, (2) constructive notice by virtue of the use of the federal registration symbol, and (3) via cease and desist letters, Defendants

continue to deliberately use confusingly similar variants of the Plaintiff Marks on, thereby willfully infringing Plaintiff's rights in the Plaintiff Marks with potential harm to Plaintiff's reputation, customers, and services.

2. This is a civil action for: (i) trademark infringement arising under Section 32(1) of the Lanham Act of 1946, as amended, 15 U.S.C. § 1051 *et seq*., including willful infringement; (ii) counterfeiting under the Lanham Act of 1946, as amended; (iii) unfair competition, use of false designations of origin in commerce, and false advertisement, arising under Section 43(a) of the Lanham Act of 1946, as amended, 15 U.S.C. § 1125(a); (iv) violation of the Michigan Deceptive Trade Practices Act under Mich. Comp. Stat. § 445.901 et seq.; (v) common law unfair competition under the common law of the State of Michigan; (vi) breach of contract, and (vii) unjust enrichment under the common law of the State of Michigan.

## THE PARTIES

3. Plaintiff Great Lakes Transportation Holding Company, LLC d/b/a Metro Cars, ("Metro Cars" or "Plaintiff"), is a Michigan corporation with its principal place of business located at 24957 Brest Road, Taylor, Michigan, 48180. For many years, Plaintiff has been engaged in and now is engaged in the provision of luxury sedan chauffeuring and other transportation services ("Services" or

"Plaintiff Services"), and has used the Plaintiff Marks to identify its services for over 15 years.

4. Upon information and belief, Defendant Cab One, LLC, is a Michigan limited liability company with its principal place of business and registered office at 1146 Colrain St. SW, Wyoming, MI 49509.

5. Upon information and belief, Defendant Joel Tejada resides at 1146 Colrain St. SW, Wyoming, MI 49509.

6. Upon information and belief, Defendant John Edward Hedrick, Jr. resides at 890 Cobblestone Way Dr SE, Byron Center, MI 49315.

## JURISDICTION AND VENUE

7. This is a suit for trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1051 *et seq*.; unfair competition, false designation of origin, and false advertising under Section 43(a)(1) of the Lanham Act; trademark dilution under Section 43(c) of the Lanham Act; violation of the Michigan Deceptive Trade Practices Act under Mich. Comp. Stat. § 445.901 et seq.; and for common law unfair competition and unjust enrichment. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338, and the doctrines of ancillary and pendent jurisdiction.

8. Defendant Cab One, LLC has submitted to personal jurisdiction in this Court because, *inter alia*, it is a Michigan limited liability company and has

therefore availed itself to the rights and benefits of the laws of Michigan. In addition, Defendant Cab One, LLC is transacting and doing business within this judicial district and is committing the acts complained of herein within this judicial district.

9. This Court has personal jurisdiction over Defendant Joel Tejada because he resides and has committed acts of trademark infringement and unfair competition in this judicial district.

10. This Court has personal jurisdiction over Defendant John Hedrick because he resides and has committed acts of trademark infringement and unfair competition in this judicial district.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c).

**FACTS**

12. Plaintiff is engaged in the business of providing chauffeuring and other transportation services. Plaintiff has used the Plaintiff Marks on or in connection with the Plaintiff Services to distinguish them from the services of others for over 15 years.

13. Plaintiff is the exclusive owner of all right, title and interest in the Plaintiff Marks. Plaintiff is the owner of the following United States federal trademark registrations:

| **Mark/Reg. No.** | **Reg. Date** | **Services** |
|---|---|---|
| METRO CARS<br>Reg. No.: 1,908,853 | August 1, 1995 | Class: 39<br><br>chauffeured car for hire |
| METRO CARS and Design<br><br>Reg. No. : 4,009,524 | August 9, 2011 | Class: 35<br><br>Transportation management services, namely, planning and coordinating transportation of people for others<br><br>Class: 39<br>Chauffeur services, namely, providing chauffeured automobiles, luxury automobiles and limousines for hire; luxury door-to-door ground transportation of passengers for business or personal travel by luxury automobile, limousine, executive van, mini bus and motor coach; airport ground transportation services; airport meet and greet services, namely, meeting and greeting passengers and directing them to a specific means of transportation; providing ground transportation to corporate customers in the nature of passenger shuttles; motor coach charter services; taxi transport service; medically-related para-transit ground transportation services |
| METRO CARS FL (Stylized)<br><br>RN: 3,261,698 | July 10, 2007 | Class: 39<br><br>chauffeured car for hire |

| **Mark/Reg. No.** | **Reg. Date** | **Services** |
|---|---|---|
| METRO CAB<br><br>Reg. No.: 4,009,671 | August 9, 2011 | Int'l Class: 35<br><br>Transportation management services, namely, planning and coordinating transportation of people for others<br><br>Int'l Class: 39<br><br>Chauffeur services, namely, providing chauffeured automobiles, luxury automobiles and limousines for hire; luxury door-to-door ground transportation of passengers for business or personal travel by luxury automobile, limousine, executive van, mini bus and motor coach; airport ground transportation services; airport meet and greet services, namely, meeting and greeting passengers and directing them to a specific means of transportation; providing ground transportation to corporate customers in the nature of passenger shuttles; motor coach charter services; taxi transport service; medically-related para-transit ground transportation services |
| METRO CAB and Design<br><br>METRO CAB<br><br>Reg. No.: 6,831,297 | August 30, 2022 | Int'l Class: 39<br><br>Transportation management, namely, arranging the transportation of persons and arranging of passenger transportation services for others; chauffeur services, namely, providing chauffeured automobiles, luxury automobiles and limousines for hire; luxury door-to-door ground transportation of passengers for business or personal travel by luxury automobile, limousine, executive van, mini bus and motor coach; airport ground transportation services; airport meet and greet services, namely, meeting and greeting passengers and directing them |

| Mark/Reg. No. | Reg. Date | Services |
|---|---|---|
| | | to a specific means of transportation; providing ground transportation to corporate customers in the nature of passenger shuttles; motor coach charter services; taxi transport service; medically-related para-transit, namely, transport of passengers via ground transportation services |

14. True and correct copies of Plaintiff's registrations are attached hereto as Exhibits A, B, C, D, and E ("Plaintiff's Registrations"). In addition, copies of the assignment abstracts corresponding to Plaintiff's Registrations are attached hereto as Exhibit F. Plaintiff's Registrations are in full force and effect, and are now incontestable.

15. Plaintiff has devoted significant advertising resources and creative energies towards creating goodwill in the Plaintiff Marks. The Plaintiff Marks are distinctive, well known, and widely recognized by the consuming public as a designation of source, and specifically as a designation of source of the Plaintiff Services. The Plaintiff Marks are federally registered and are entitled to constructive notice under 15 U.S.C. § 1072. Examples of Plaintiff's use of the Plaintiff Marks are illustrated by the website pages depicted in Exhibits G and H.

16. The Plaintiff Marks have been continuously used in commerce for over 15 years. Plaintiff has devoted significant marketing, advertising, and

financial resources to developing and establishing in the minds of consumers that the Plaintiff Marks signify the Plaintiff Services. As a result of these efforts, the Plaintiff Marks are widely recognized by the consuming public as a designation of source for the Plaintiff Services.

17. Plaintiff expends significant revenue and resources in advertising and promoting its services using the Plaintiff Marks through various media, and ensuring the Plaintiff Marks serve to identify the source of the Plaintiff Services. Plaintiff has prominently displayed the Plaintiff Marks on the internet and owns the rights in the domain names www.metrocars.com and www.metrocabmichigan.com, and has used the Plaintiff Marks in its advertising materials, on vehicles, on its website and/or on other materials promoting the Plaintiff Services.

18. As a result of Plaintiff's promotion and marketing efforts and the quality of the Plaintiff Services, the Plaintiff Marks are widely and favorably known. The Plaintiff Marks have become a valuable asset of Plaintiff and a symbol of its goodwill.

19. Due to Plaintiff's exclusive prior and continuous use, the Plaintiff Marks have become the exclusive property of Plaintiff. Furthermore, such use has caused the Plaintiff Marks to acquire a meaning associated exclusively with the

Plaintiff Services and serves to distinguish the Plaintiff Services from the services of others.

**Defendants' Illicit Activities**

20. Upon information and belief, Defendants engage in the business of providing chauffeur and other transportation services.

21. In and around May 2024, Plaintiff and Defendant John Hedrick signed an Owner/Independent Operator Agreement. Pursuant to the Agreement, Defendant John Hedrick served as a luxury sedan and/or taxi driver and provided transportation services under Plaintiff Marks under the terms of the agreement.

22. In and around March 2025, Plaintiff notified Defendant John Hedrick that it had exercised its right to terminate the Owner/Independent Operator Agreement pursuant to the terms of the agreement. In and around March 2025, Defendant John Hedrick acknowledged this termination as he signed a copy of the notification of termination of the Owner/Independent Operator Agreement.

23. Following termination of the agreement, upon information and belief, Defendant John Hedrick, markets and provides his transportation services using Square, also using Square to collect payments. On information and belief, Defendant John Hedrick sends messages to customers under the name "Metro Cab" through Square's messaging service. In addition, on information and belief, Defendant John Hedrick issues receipts to customers under the business name

"Metro Cab" via Square's products and/or services. Exhibit I contains a redacted receipt issued from "Metro Cab <messenger@messaging.squareup.com>". The trademark "Metro Cab" appears several times on the receipt and customers are asked to "Let Metro Cab know how your experience was" through a link on the Square platform.

24. On information and belief, Defendant John Hedrick serves as a driver for Defendants Cab One, LLC and/or Joel Tejada, or is acting jointly and/or in concert with, or otherwise associated with, Defendants Cab One, LLC and/or Joel Tejada.

25. On information and belief, Defendants, acting individually, jointly, and/or in concert, advertise and sell their services via a Google Business Profile using trademarks that are identical to Plaintiff's Marks. Exhibit J contains a screenshot of this Google Business Profile for "Metro Cab One," with a (616) 308-6559 phone number.

26. On information and belief, Defendants Cab One, LLC and/or Joel Tejada own the phone number (616) 308-6559.

27. On information and belief, at least one customer of Plaintiff, after booking and/or pre-paying for Plaintiff's services, have mistakenly called the phone number (616) 308-6559 upon experiencing consumer confusion, to confirm their previously made reservations with Plaintiff. On information and belief, the

person(s) answering such calls at (616) 308-6559 mislead at least one of Plaintiff's customers by impersonating Plaintiff and claiming to "confirm" such reservations, even though Defendants had not initially taken such reservation. A police report was filed with the Kent County Sheriff's Department reporting such unlawful deception and theft.

28. On information and belief, at least one or more of Defendants, acting individually, jointly, and/or in concert, intercepted the pickup information and rides booked with Plaintiff and deceived customers including through the use of Plaintiff's Marks. As a result, customers have mistakenly been picked up by at least one or more of Defendants, or at least one or more of Defendants arrived early to pick the customer up.

29. On information and belief, thereafter, at least one or more of Defendants, acting individually, jointly, and/or in concert, after improperly using Plaintiff Marks and/or intercepting rides intended for Plaintiff, diverted or sought to divert such customers by arriving to pick up Plaintiff's customers and transporting such customers. On information and belief, the aforementioned police report also complained of this illicit activity.

30. On information and belief, following transporting Plaintiff's customers, at least one or more of Defendants, acting individually, jointly, and/or in concert, have directed such customers to request a refund of their pre-payment

from Plaintiff and pay the Defendant-driver directly. This has resulted in a double payment for the customer of over $400 in at least one instance.

31. On and around February 16, 2026, Plaintiff sent Defendants Joel Tejada and Cab One, LLC (formerly named Metro Cab One, LLC) a cease and desist letter. A copy of the letter is attached hereto as Exhibit K.

32. On and around April 22, 2026, Plaintiff sent Defendant John Hedrick a cease and desist letter. A copy of the letter is attached hereto as Exhibit L.

33. While Defendants Cab One, LLC and Joel Tejada agreed to change its registered trade name (from Metro Cab One, LLC) and transfer its domain name www.metrocabone.com to Plaintiff after receiving the February 16, 2026 cease and desist letter, Defendants, acting individually, jointly, and/or in concert, continue to market their services via a Google Business Profile by using Plaintiff Marks, which is illustrated in Exhibit J. In addition, on information and belief, Defendants Cab One, LLC and Joel Tejada, acting individually, jointly, and/or in concert with Defendant John Hedrick, continue to seek to divert Plaintiff's customers via this Google Business Profile or other methods.

34. Defendants Cab One, LLC and Joel Tejada and Defendant John Hedrick have been previously advised of Plaintiff's federal trademark rights in the Plaintiff Marks including on or around February and April 2026, respectively, and the Plaintiff Marks are well-known, especially in the area where Defendants do

business. In addition, Defendant John Hedrick has knowledge of Plaintiff and Plaintiff Marks because from in and around May 2024 through in and around March 2025, Defendant John Hedrick formerly served as a driver for Plaintiff and provided driving services under Plaintiff Marks pursuant to the Owner/Independent Operator Agreement. Under this Agreement and the Trademark Laws, Defendant Hedrick notified of Plaintiff's rights in Plaintiff Marks and was prohibited from unauthorized use of such marks. As such Defendants have received actual and constructive notice of Plaintiff's rights in the Plaintiff Marks. Defendants are acting with full knowledge of Plaintiff's prior rights in the Plaintiff Marks and, despite this, Defendants are willfully infringing the Plaintiff Marks.

35. Consumers have been and will likely continue to be confused by Defendants' current and continuing use of infringing trademarks that are confusingly similar to the Plaintiff Marks. The infringing trademarks used by Defendants are generally referred to as the "Defendants' Marks."

36. Defendants' use of the Defendants' Marks is the same and/or similar to and conveys the same commercial impression as that of the Plaintiff Marks, especially because the Defendants' Marks are used by Defendants in advertising and promoting chauffeur and other transportation services, which are identical to the Plaintiff Services.

37. The likelihood of confusion between the METRO CAB Mark and the Defendants' Marks will continue until Defendants cease all use of the Defendants' Marks and cease all sales and advertising of the Defendants' Marks branded services. Defendants' use of the Defendants' Marks for chauffeur and other transportation services constitutes willful and intentional infringement and unfair competition, and is harmful to Plaintiff.

38. Defendants' use of the Defendants' Marks in connection with the Defendants' Services is likely to cause confusion as to the source and origin of the Defendants' Services and is likely to cause confusion, or to cause mistake, or to deceive the public and the trade as to the source or sponsorship of the Defendants' Services and to falsely suggest a connection with Plaintiff, and mislead the public into believing that the Defendants' Services emanate from, are approved or sponsored by, or are in some way associated or connected with Plaintiff.

39. Defendants' use of the Defendants' Marks in their advertising in connection with identical services falsely conveys that Plaintiff is affiliated with Defendants or otherwise misrepresents the nature, characteristics, and qualities of Defendants' Services and commercial activities. The advertising and continued use by Defendants of the Defendants' Marks, upon information and belief, actually and materially deceived or has the capacity to materially deceive a substantial segment of the audience.

40. Current and prospective customers looking for the Plaintiff Services offered under the Plaintiff Marks and encountering the Defendants' Marks have been and are likely to be confused or deceived as to the source of the services and sales could thus be diverted to Defendants.

41. Upon information and belief, Defendants' adoption and use of the Defendants' Marks represents a deliberate attempt to trade unlawfully upon the goodwill associated with the METRO CAB Mark.

42. Defendants' wrongful acts have caused and are causing irreparable injury and monetary damages to Plaintiff, and unless this Court restrains Defendants from further commission of these acts, Plaintiff will suffer further irreparable injury for which Plaintiff has no adequate remedy at law.

**COUNT I — TRADEMARK INFRINGEMENT, 15 U.S.C. § 1051 *et seq.***
**(against all Defendants)**

43. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

44. Defendants' use of the METRO CAB trademarks, or confusingly similar variants thereof, is likely to cause, and has actually caused confusion, mistake, or deception as to:

(a) Defendants' affiliation, connection, or association with Plaintiff; and/or

(b) the origin, sponsorship, or approval of Defendants' Services or commercial activities by Plaintiff.

45. Defendants' activities as described above constitute infringement of the METRO CAB Mark in violation of Section 32(1) of the Lanham Act of 1946, as amended (15 U.S.C. § 1114(1)).

46. Upon information and belief, Defendants adopted and first used colorable imitations of, and designations substantially identical to, the Plaintiff Marks with full knowledge of Plaintiff's ownership and rights of the Plaintiff Marks. Therefore, Defendants have willfully infringed such rights.

47. Upon information and belief, Defendants have made and will continue to make substantial profits and gains that they are not entitled to in law or equity.

48. Upon information and belief, Defendants intend to continue their willful infringing acts, unless restrained by this Court.

49. Plaintiff has been damaged by Defendants' use of the above designations and is likely to be further damaged by Defendants' continued use of these designations, and Plaintiff has no adequate remedy at law.

**COUNT II — FEDERAL COUNTERFEITING, 15 U.S.C. §1051 *et seq.***
**(against all Defendants)**

50. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

51. Defendants have been advised that they are not authorized to use the infringing Defendants' Marks to sell or offer for sale Defendants' Services, which overlap with or are the same as the Plaintiff Services.

52. Even after being advised and denied permission to use the infringing Defendants' Marks to sell or offer for sale Defendants' Services, Defendants have continued to use the infringing Defendants' Marks to sell or offer for sale the counterfeit Defendants' Services.

53. Defendants' counterfeit services directly compete with the authentic Plaintiff Services that are advertised, promoted, and sold under the Plaintiff Marks, even though Defendants' Services are not authentic Plaintiff Services.

54. The infringing Defendants' Marks used with Defendants' counterfeit services are substantially indistinguishable from the registered Plaintiff Marks.

55. Use of the infringing Defendants' Marks with Defendants' counterfeit services is likely to cause confusion or mistake or deceive the public that the Defendants' counterfeit services sold under the Defendants' Marks emanate from the same source as the Plaintiff Services, or are otherwise sponsored by, associated with, or endorsed by Plaintiff.

56. By the acts set forth above, Defendants have committed acts of counterfeiting under 15 U.S.C. § 1051 *et seq*.

57. Notwithstanding Plaintiff's prior rights in the Plaintiff Marks, Defendants used the infringing Defendants' Marks with bad intent to profit therefrom, with actual and constructive knowledge of the Plaintiff Marks and Plaintiff's rights therein including the existing U.S. registrations owned by Plaintiff and the related trademark rights. Such use by Defendants is willful and designed to deceive consumers.

58. Defendants' acts have caused, and if allowed to continue will continue to cause, serious damage to Plaintiff's business, goodwill, and profits, and will permit Defendants to enjoy profits to which they are not otherwise entitled.

## COUNT III — UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING, 15 U.S.C. §1125(A)(1)
**(against all Defendants)**

59. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

60. Defendants' promotion, advertising, distribution, sale, and/or offering for sale of the Defendants' Services are likely to confuse, mislead, or deceive consumers, the public, and the trade as to the origin, source, sponsorship, or affiliation of the Defendants' Services, and are intended, and are likely to cause, such parties to believe in error that the Defendants' Services have been authorized,

sponsored, approved, endorsed, or licensed by Plaintiff or that Defendants are in some way affiliated with Plaintiff.

61. In addition, Defendants' use of the above designations misrepresents the nature, characteristics, and/or qualities of Defendants' Services and commercial activities.

62. Thus, Defendants' activities as described above constitute unfair competition, the use of false designations of origin in commerce, and false and misleading descriptions and representations of fact, all in violation of Section 43(a) of the Lanham Act of 1946, as amended (15 U.S.C. § 1125(a)).

63. Upon information and belief, Defendants have made and will continue to make substantial profits and gains that it is not entitled to in law or equity.

64. Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

65. Plaintiff has been damaged by Defendants' use of the above designations and is likely to be further damaged by Defendants' continued use of the designations, and Plaintiff has no adequate remedy at law. In particular, Defendants' use of the designation is likely to cause the METRO CAB Mark to lose its significance as an indicator of origin.

## COUNT IV — MICHIGAN DECEPTIVE TRADE PRACTICES, MICH. COMP. STAT. § 445.901 *et seq.*
**(against all Defendants)**

66. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

67. Defendants, through their above-described conduct, have engaged in unlawful and unfair business practices within the meaning of the Michigan Consumer Protection Act, M.C.L.A. § 445.901 et seq. by causing a probability of confusion or misunderstanding as to the source, sponsorship, approval or certification of the Defendants' Services, where there is a high probability consumers will believe the Defendants' Services are provided by, sponsored by, endorsed by, or approved by, Plaintiff.

68. On information and belief, Defendants' conduct is calculated to increase business and profits by confusing members of the public, thereby allowing Defendants to misappropriate the valuable goodwill of the Plaintiff Marks and unfairly compete with Plaintiff under the laws of Michigan.

69. Plaintiff has suffered and will continue to suffer actual damages unless Defendants' conduct is enjoined. Defendant's conduct in violation of MCL 445.903(1) entitles Plaintiff to its reasonable attorney's fees pursuant to MCL 445.911. In addition, because Defendants' actions, on information and belief, were carried out intentionally, willfully and/or deliberately in violation of Plaintiff's rights, an award of exemplary and/or punitive damages is justified.

## COUNT V — COMMON LAW UNFAIR COMPETITION
**(against all Defendants)**

70. Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

71. Plaintiff and Defendants are competitors, offering the same services, i.e., chauffeur and limousine services.

72. Defendants' actions as set forth herein are designed to unfairly compete with Plaintiff and constitute unfair competition under the common law of the state of Michigan.

73. Upon information and belief, Defendants have made and will continue to make substantial profits and gains that they are not entitled to in law or equity.

74. Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

75. Defendants' acts have damaged and will continue to damage Plaintiff, and Plaintiff has no adequate remedy at law.

## COUNT VI — BREACH OF CONTRACT
**(against Defendant John Hedrick)**

76. Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

77. Plaintiff and Defendant John Hedrick were parties to an Owner/Independent Operator Agreement. The Owner/Independent Operator Agreement was a binding, valid, and enforceable contract.

78. The Owner/Independent Operator Agreement contains confidentiality provisions whereby Defendant John Hedrick agreed to maintain the confidentiality of confidential and proprietary knowledge and information during his relationship with Plaintiff and thereafter.

79. The Owner/Independent Operator Agreement contains a "non-solicitation" provision, wherein Defendant John Hedrick agreed, inter alia, not to "attempt to entice or induce any customer or prospective customer of [Plaintiff] to cease doing business or to reduce the amount of business that customer does with [Plaintiff]," during the duration of the agreement and for two years after termination of the agreement.

80. The non-solicitation and confidentiality provisions, amongst others, survived termination of the Owner/Independent Operator Agreement.

81. Defendant John Hedrick materially breached the Owner/Independent Operator Agreement by making use of confidential information of Plaintiff in violation of the terms of this agreement.

82. Defendant John Hedrick materially breached the Owner/Independent Operator Agreement by attempting to entice or inducing customer(s) or prospective customer(s) of Plaintiff to cease doing business or to reduce the amount of business that customer does with Plaintiff in violation of the terms of this agreement.

83. Plaintiff has been and will continue to be damaged by Defendant John Hedrick's ongoing breaches of the Owner/Independent Operator Agreement.

84. Plaintiff is suffering irreparable harm and will continue to suffer irreparable harm so long as Defendant Hedrick continues to make use of Plaintiff's confidential information and/or attempt to entice or induce Plaintiff's customers or prospective customers to cease doing business or to reduce the amount of business that customer does with Plaintiff in breach of the Owner/Independent Operator Agreement.

85. In addition, the Owner/Independent Operator Agreement also contains a provision providing that Defendant Hedrick agrees violations of the confidentiality and/or non-solicitation provisions will result in irreparable harm.

86. In the Owner/Independent Operator Agreement, Defendant Hedrick further agreed that violations of the confidentiality and/or non-solicitation provisions entitle Plaintiff to temporary and injunctive relief, in addition to other legal or equitable damages or remedies. Defendant Hedrick also agreed to reimburse Plaintiff for the cost of its legal fees and expenses incurred in enforcing the provisions of the Owner/Independent Operator Agreement and that Plaintiff is entitled to recover such legal fees and expenses in any legal action to enforce, inter alia, the confidentiality and/or non-solicitation provisions.

## COUNT VII — UNJUST ENRICHMENT
**(against all Defendants)**

87. Plaintiff repeats and realleges each of the allegations set forth in the preceding paragraphs as if fully set forth herein.

88. Benefits have been conferred upon Defendants by Defendants' unauthorized use of the Plaintiff Marks. Defendants have received a benefit by avoiding the labor and expense of independently developing a source designating mark and the goodwill associated therewith.

89. Defendants have appreciated, accepted, and retained these benefits.

90. Upon information and belief, Defendants have further benefited by selling services they would not otherwise have been able to sell. It is inequitable for Defendants to retain these benefits without the payment of value to Plaintiff.

91. Defendants have been unjustly enriched at the expense of Plaintiff.

92. Defendants activities as described above constitute unjust enrichment under the common law of the State of Michigan.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays that this Court enters judgment in its favor against Defendants as follows:

A. That Plaintiff's rights in and to the Plaintiff Marks are valid, enforceable and have been infringed by Defendants.

B. That Defendants have willfully infringed Plaintiff's rights in the Plaintiff Marks.

C. That Defendants, their agents, servants, employees and all persons in active concert or participation with them, be preliminarily and permanently enjoined and restrained from:

(1) using Plaintiff's METRO CARS or METRO CAB trademarks or colorable imitations thereof and other designs, designations and indicia which are likely to cause confusion, mistake or deception with respect to Plaintiff's rights, including but not limited to any name containing the words "Metro" and "Car" or "Cars" or "Cab" or "Cabs" or "Taxi" or "Taxis" or "Sedan" or "Sedans" or "Limo" or "Limos" in close proximity;

(2) advertising in any way, including on any online platform or in the source code for any websites, including, but not limited to, via a Google Business Profile or Square, under the Plaintiff Marks or any colorable imitations of the Plaintiff Marks or other designs, designations and indicia which are likely to cause confusion, mistake or deception with respect to Plaintiff's rights in the Plaintiff Marks;

(3) operating any domain name containing the word "Metro" and "Car" or "Cars" or "Cab" or "Cabs" or "Taxi" or "Taxis" or

"Sedan" or "Sedans" or "Limo" or "Limos" in close proximity or any variations thereof which are likely to cause confusion, mistake or deception with respect to Plaintiff's rights;

(4) using the designation "Metro Cars" or "Metro Car" or "Metro Cab" or "Metro Cabs" or "Metro Taxi" or "Metro Taxis" or "Metro Sedan" or "Metro Sedans" or "Metro Limo" or "Metro Limos" or any variations thereof within meta-tags for, or as html/source codes for, Defendants' websites, or buying key words for advertising online containing "Metro Car(s)" or "Metro Cab(s)" or "Metro Taxi(s)" or "Metro Sedan(s)" or "Metro Limo(s)";

(5) using the designation "Metro Cars" or "Metro Car" or "Metro Cab" or "Metro Cabs" or "Metro Taxi" or "Metro Taxis" or "Metro Sedan" or "Metro Sedans" or "Metro Limo" or "Metro Limos" any variations thereof on Defendants' social media pages;

(6) using Metro Car(s), Metro Cab(s), Metro Taxi(s), Metro Sedan(s), Metro Limo(s), or any variations thereof (including singular and plural forms), as meta tags for, or as html or other source code for any of their websites including in graphics, reviews or embedded content, and in any social media accounts including as a handle, hashtag, or otherwise; and

(7) otherwise infringing Plaintiff's rights in the Plaintiff Marks and competing unfairly with Plaintiff.

D. That Defendants are further ordered to do all of the following:

(1) to cease operating under the business name Metro Cab in a Google Business Profile, cease operating under the business Metro Cab One in Square, and cease operating under any business name incorporating "Metro" and "Car(s)", "Metro" and "Cab(s)", "Metro" and "Taxi(s)", "Metro" and "Sedan(s)", "Metro" and "Limo(s)", and variations thereof (including singular and plural forms);

(2) to cease operating any internet domain name incorporating "Metro" and "Car(s)", "Metro" and "Cab(s)", "Metro" and "Taxi(s)", "Metro" and "Sedan(s)", "Metro" and "Limo(s)", and variations thereof (including singular and plural forms); and to cease using "Metro Car(s)", "Metro Cab(s)", "Metro Taxi(s)", "Metro Sedan(s)", "Metro Limo(s)", or any variations thereof (including singular and plural forms), as meta tags for, or as html or other source code for any of their websites including in graphics, reviews, or embedded content, and in any social media accounts including as a handle, hashtag, or otherwise;

(3) to identify to Plaintiff all domain names Defendants own and/or operate that advertise, sell, or offer for sale Defendants' Services, as well as any domain name incorporating the terms "Metro" and "Car(s)" in close proximity, "Metro" and "Cab(s)" in close proximity, "Metro" and "Taxi(s)" in close proximity, "Metro" and "Sedan(s)" in close proximity, and/or "Metro" and "Limo(s)" in close proximity, including any variations thereof (including singular and plural forms), and to identify the domain name registrars or registries of same to Plaintiff, and to Defendants and/or any registrars to transfer to Plaintiff such domain names;

(4) to identify all ways Defendants use the terms "Metro" and "Car(s)", "Metro" and "Cab(s)", "Metro" and "Taxi(s)", "Metro" and "Sedan(s)", and "Metro" and "Limo(s)", in close proximity, including on business cards, advertising, telephone, verbal communications, social media, and all other ways to Plaintiff, and to destroy such materials, cease such use, and/or remove or take down, as appropriate, and to cease referring to the terms "Metro" and "Car(s)" in close proximity, "Metro" and "Cab(s)" in close proximity, "Metro" and "Taxi(s)" in close proximity, "Metro" and "Sedan(s)" in close proximity, and "Metro" and "Limo(s)" in close proximity,

including as a part of any corporate name, company name, tradename, or DBA;

(5) to identify all website designers, search engine marketing ("SEM") and search engine optimization ("SEO") tools, platforms, service providers, and/or companies, graphic designers, search engines (e.g., Google, Yahoo, Bing), advertisers including any pay-per-click advertising platforms, review services (e.g., Yelp, Google, Trust Pilot), payment platforms and payment applications, and any other persons or entities involved or retained in promoting or servicing Defendants' taxi, transportation, or chauffeur services including on or in connection with any of Defendants' websites to Plaintiff, and provide all known addresses and contact information including name(s), phone number(s) and email address(es) for each of Defendants' websites; and to order Defendants and any others acting in concert to remove and/or cease using or purchasing or enabling the purchase of "Metro" and "Car(s)", "Metro" and "Cab(s)", "Metro" and "Taxi(s)", "Metro" and "Sedan(s)", and/or "Metro" and "Limo(s)" in close proximity, or any variations thereof including plural and singular forms, from any domain names owned by Defendants, as meta tags, key words, or in the source code for any

domain names, or as the subject of or part of any advertising agreement, SEM and/or SEO efforts or other arrangement;

(6) to provide a log/list of customers or potential customers who provided any reviews referencing "Metro Car(s)" or "Metro Cab(s)" or "Metro Taxi(s)" or "Metro Sedan(s)" or "Metro Limo(s)", or who contacted Defendants and mentioned Plaintiff or "Metro Car(s)" or "Metro Cab(s)" or "Metro Taxi(s)" or "Metro Sedan(s)" or "Metro Limo(s)" in any way, or who contacted the Defendants to inquire about Metro Car(s) or Metro Cab(s) or "Metro Taxi(s)" or "Metro Sedan(s)" or "Metro Limo(s)" and/or any relationship with Plaintiff (collectively "Customers"), or otherwise indicated any confusion between Plaintiff, Metro Car(s), Metro Cab(s), Metro Taxi(s), Metro Sedan(s), Metro Limo(s) and/or any of the Defendants and to provide Plaintiff, c/o Plaintiff's counsel, a list/log of all such Customers providing relevant dates, the method of contact, and all known contact information including name(s), address(es), phone number(s) and email address(es);

(7) to cease directly or indirectly infringing, or causing, enabling, facilitating, encouraging, promoting, inducing, or participating in the infringement or violation of any of Plaintiff's

trademarks or other intellectual property, whether now in existence or hereafter created, including but not limited to any of Plaintiff's trademarks or similar variations thereof for any METRO CAR(S) or METRO CAB(S) marks;

(8) to cease offering to the public, providing, marketing, advertising, promoting, selling, hosting, utilizing or otherwise enabling Defendants to use or advertise, or benefit from, any domain names, content, user reviews, websites, key words, meta tags, SEM (including pay-per-click advertising), SEO, or the like incorporating METRO and CAR(S), METRO and CAB(S), METRO and TAXI(S), METRO and SEDAN(S), and/or METRO and LIMO(S) in close proximity; and

(9) to cease supporting or facilitating access to any or all domain names, URLs, or websites in violation of any of the above provisions, or supporting or facilitating the purchase of advertising, key words, metatags, Adwords, online reviews, handles, pages or the like, which themselves infringe Plaintiff's rights under the Trademark Laws; and

(10) to file with the Court and serve on Plaintiff detailed compliance reports submitted thirty (30) days and one hundred eighty

(180) days from entry of this Order detailing all steps or attempts at compliance.

F. Pursuant to 15 U.S.C. § 1118, that Defendants deliver to Plaintiff for destruction all infringing articles (including, without limitation, all labels, advertisements, promotional materials, and brochures) within its possession, custody, or control and immediately discontinue use of the infringing websites that bear the Defendants' Marks or any other designation, symbol, or device that is confusingly similar to the Plaintiff Marks.

G. Pursuant to 15 U.S.C. § 1117(a), MCL 445.911, and the common law, that Defendant be directed to account to Plaintiff for all gains, profits, and advantages derived from Defendants' wrongful acts.

H. Pursuant to 15 U.S.C. § 1117(a), that Plaintiff recovers from Defendants the greater of three times the amount of Defendants' profits or any damages sustained by Plaintiff, together with interest on such amount and the costs of this action. Further, pursuant to 15 U.S.C. § 1117(c) and § 1117(d), that Plaintiff be permitted to elect statutory damages.

I. Pursuant to MCL 445.911, that Plaintiff recovers from Defendants exemplary and/or punitive damages.

J. Pursuant to 15 U.S.C. § 1117(a), that the Court determine that the case is exceptional and that Plaintiff recovers from Defendants its attorneys' fees and the costs of this civil action.

K. Pursuant to MCL 445.911, that Plaintiff recovers from Defendants its attorneys' fees and the costs of this civil action.

L. That Defendant John Hedrick is preliminarily and permanently enjoined and restrained from violating the non-solicitation and confidentiality provisions of the Owner/Independent Operator Agreement.

M. Awarding Plaintiff damages, in an amount to be proven at trial, sufficient to compensate it for all forms of loss, without limitation, actual damages, lost goodwill, and other costs incurred by reason of Defendant John Hedrick's material breach of the Owner/Independent Operator Agreement.

N. Awarding legal fees and expenses incurred in connection with Plaintiff's enforcement of the Owner/Independent Operator Agreement against Defendant John Hedrick.

O. Awarding pre- and post-judgment interest as allowed by law;

P. That Plaintiff is granted such other and further relief as this Court may deem appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all issues so triable.

Respectfully submitted,

Date: October 27, 2026

DYKEMA GOSSETT PLLC

By: */s/ Paul T. Stewart*

Paul T. Stewart (P79977)
2723 South State Street, Suite 400
Ann Arbor, MI 48104
(734) 214-7629
pstewart@dykema.com

Jennifer Fraser
1100 K St., NW, Suite 1100 West
Washington, DC 20005
202-906-8712
jfraser@dykema.com

*Attorneys for Plaintiff*

## INDEX OF EXHIBITS

A. U.S. Trademark registration number 1,908,853.

B. U.S. Trademark registration number 4,009,524.

C. U.S. Trademark registration number 3,261,698.

D. U.S. Trademark registration number 4,009,671.

E. U.S. Trademark registration number 6,831,297.

F. Trademark assignment abstract for U.S. Trademark registration numbers 1,908,853 and 3,261,698.

G. Homepage of www.metrocars.com.

H. Homepage of www.metrocabmichigan.com.

I. A receipt issued from "Metro Cab <messenger@messaging.squareup.com>".

J. October 22, 2026 Google search results for "metro cab in grand rapids" depicting Google business profile description.

K. February 16, 2026 letter to Defendants Joel Tejada and Cab One, LLC (formerly named Metro Cab One, LLC).

L. April 22, 2026 letter to Defendant John Hedrick.